IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEAN M. NELSON                                              CV 07-1234-MA

        Plaintiff,                                    OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

        Defendant.

SHARON MAYNARD
Bennett, Hartman, Morris, and Kaplan LLP
111 S.W. Fifth Ave., Suite 1650
Portland, OR 97204
(503) 227-4600

        Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158

TERRY E. SHEA
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2143

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge.

Plaintiff Jean M. Nelson seeks judicial review of the final decision of the Commissioner denying her March 28, 2005, application for supplemental security income benefits (SSI benefits) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.[1]

Plaintiff claims she has been disabled since December 25, 1999, because of ulcers, headaches, stroke, depression, seizures, brain tumor, kidney failure joint pain, and a foot operation. Her claim was denied initially and on reconsideration. The Administrative Law Judge (ALJ) held a hearing on February 8, 2007, and on March 16, 2007, issued a decision that plaintiff was not disabled. Plaintiff timely appealed the decision to the Appeals Council. On June 22, 2007, the Appeals Council denied plaintiff's request for review. The ALJ's decision, therefore, became the final decision of the Commissioner for purposes of review.

Plaintiff seeks an order from this court reversing the Commissioner's final decision and remanding the case for an immediate payment of benefits.

For the following reasons, the court **REVERSES** the final decision of the Commissioner and **REMANDS** this case for further

---

[1] Plaintiff filed a prior application for SSI benefits in September 2004 that was denied on December 8, 2004. Plaintiff did not file a timely appeal of that decision.

2 - OPINION AND ORDER

proceedings consistent with this Opinion and Order.

## **THE ALJ'S FINDINGS**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability.

At Step Two, the ALJ found plaintiff has epilepsy, the residual effects of a "cerebral vascular accident" (stroke), and headaches, that are severe impairments under 20 C.F.R. §404.1520(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found these impairments do not meet or equal a listed impairment.

The ALJ found plaintiff has the residual functional capacity to lift and carry 25 lbs frequently and 50 lbs occasionally, and sit, stand and walk for six hours in an eight hour workday, all as long as she takes "seizure precautions", i.e., she should not work at heights, operate heavy machinery, or

3 - OPINION AND ORDER

be employed in any capacity in which a brief lapse of consciousness could cause harm to herself or others.

At Step Four, the ALJ found plaintiff is able to perform her past relevant work as a bartender.

Consistent with the above findings, the ALJ found plaintiff was not under a disability and denied her claim for benefits.

## ISSUES ON REVIEW

Plaintiff contends the Commissioner's final decision should be reversed because the ALJ erred (1) in discrediting plaintiff's testimony based on lack of credibility, and (2) in discrediting lay witness testimony. Plaintiff contends that if the above testimony is credited as true, the ALJ would be required to find plaintiff is disabled.

## LEGAL STANDARDS

**Burden of Proof**.

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision

4 - OPINION AND ORDER

if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a

5 - OPINION AND ORDER

social security case should be remanded."  <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).

## RELEVANT RECORD

### 1. **Plaintiff's Testimony.**

Plaintiff was born in 1944 and was 62 years old on the date of the Commissioner's final decision.  She has a tenth grade education and has previously worked as a bartender, printer, and bus passenger counter.  She also helped "set up" a Walgreens store.  Plaintiff acknowledges that until 2004, she had been drinking a half gallon of vodka each day.

Plaintiff lives in an apartment by herself.  She is able to dress and bathe herself, do some household chores, cook a little, wash dishes, and do some shopping.  She does not mop or vacuum, or do the laundry.  Her daughter helps her with chores.  Plaintiff does not exercise, but she reads a lot and watches some television.

Plaintiff suffered a stroke in 2000.  She began having seizures in 2004.  She voluntarily stopped driving and gave up her drivers' license because of her seizures.  She sleeps only about four hours a night because of headaches.  She naps about two hours during the day because she is tired.  She has seizures about once or twice every two months during which she will black out for 5-10 minutes and have double vision.

Plaintiff's primary care physician is Dr. Wehbe, who she

sees once every two weeks.  Her prescribed medications include Depakote and Gabapentin (to control the seizures), Hydrochlorothiazide (to reduce swelling from water retention), Prozac and Trazodone (for depression), and Nexium (for erosive esophagitis, i.e., heartburn).

Plaintiff has headaches "practically all the time."  On a pain scale of 1-10, they rate a 10 "most of the time", i.e., four times a week.  When she has the most severe headaches she lays down because no medication eases the pain.  She takes medications for the headaches but they do not work well.  She cannot work when she has such headaches.

After her stroke, plaintiff began suffering from weakness in her right arm.  She is right-handed and as a result, she sometimes has difficulty lifting and holding things in her hand.

**2.  Lay Witness Testimony**.

Plaintiff's son, Timothy Jones, submitted a written statement that before her illness, plaintiff could walk up and down stairs without difficulty, go fishing and camping, and take care of her dog.  Since the onset of her illness, plaintiff has difficulty dressing, bathes less frequently, does not wash her hair every day, has difficulty getting up and down from the toilet, and does not drive.  Her memory is poor.  She prepares meals, usually on a daily basis.  She tires easily and does not get outside as much as she should.  She has "lots of headaches

7 - OPINION AND ORDER

that prevent her from engaging in her hobbies, and now spends time reading and watching television."  Jones sees his mother on weekends and takes her shopping and to her medical appointments.  He also takes care of her dog.

His mother suffers headaches that prevent her from enjoying television and reading, and limit her ability to lift, squat, bend, stand, reach, walk.  He witnessed one seizure in 2005 and has heard about others.

**3.    Relevant Medical Record - Treatment Providers.**

   **Oregon Health and Science University (OHSU).**

On September 25, 2004, Plaintiff was treated at the OHSU Emergency Room for a complaint of abdominal pain in her right back/shoulder and epigastric area.  She also complained of mild headaches, mild shortness of breath, and vomiting.  She gave a history of regularly drinking half a gallon of vodka a day until two weeks earlier when she quit, and smoking two packs of cigarettes a day for 40 years.  The treating physician diagnosed a mildly plump pancreatic duct and possible mild diverticulosis without inflammatory signs.

On October 1, 2004, Plaintiff again visited the Emergency Room complaining of severe epigastric abdominal pain and significant weight loss and memory loss.  She remained at the hospital overnight and was discharged the next day in good condition.  She gave a history of alcoholism, where she drank

8 - OPINION AND ORDER

every day until nine days earlier when she said her son moved out of the home, thereby denying her access to alcohol. She has had blackouts and falls in the past that she attributes to drinking. Plaintiff's diagnosis on discharge was erosive esophagitis with additional diagnoses of alcohol and tobacco abuse, with a history of a peptic ulcer, hepatitis, and hypothyroidism.

On October 14, 2004, plaintiff was seen again for a "followup hospitalization." She acknowledged she continued to drink after her recent hospitalization. She was diagnosed with alcoholism and was counseled in that regard. She expressed a willingness to participate in Alcoholics Anonymous. The treating physician opined plaintiff "is not disabled and is able to work."

**The Oregon Clinic - Neurology Division.**

<u>Kimberley Wehbe, FNP - Nurse Practitioner</u>.

Plaintiff first saw Nurse Wehbe on March 2, 2005, for chronic, intense left side headaches and diplopia (blurred vision) that occurred on an almost daily basis over the past year, with some nausea and, rarely, vomiting.

A neurological examination was normal. Plaintiff gave a history of an ulcer, hypothyroidism, and stroke.

On March 30, 2005, plaintiff had a follow-up visit, during which she complained of depression, less frequent headaches, which are relieved somewhat by taking Aleve, and diffuse joint pains that were worse in the morning and after

9 - OPINION AND ORDER

periods of sitting. Nurse Wehbe observed an overweight, well-groomed woman in no acute distress.

On April 18, 2005, Nurse Wehbe examined plaintiff after she fell at her son's house. Plaintiff does not know whether she fainted. She had a small contusion on her forehead. Plaintiff also complained of some chest pain, mostly on the right side, that did not increase with exertion, and depression that was relieved somewhat by medication.

An electroencephalogram (EEG) study was done to rule out a seizure. It revealed abnormal findings in the frontal region of the brain. A follow-up brain MRI confirmed the abnormal findings by revealing a pituitary tumor.

On June 30, 2005, Nurse Wehbe saw plaintiff for a follow-up regarding plaintiff's headaches, which were intense and lasted for about three days. The only medication that helped her was Toradol. Plaintiff had some nausea but no vomiting or temporary loss of consciousness.

On July 20, 2005, plaintiff stated that she had been having headaches for 1-2 years with no change in frequency or duration.

<u>Tracy Sax, M.D. - Neurologist</u>.

Dr. Sax first saw plaintiff in May and June 2005, in conjunction with Nurse Wehbe. A Magnetic Resonance Angiogram (MRA) of the brain was normal, revealing no evidence of an aneurism or vascular anomaly. A MRA of the neck revealed mild to

10- OPINION AND ORDER

moderate stenosis (narrowing) and ulceration of both carotid arteries.

On October 7, 2005, a new MRI revealed no change in the brain lesions. Dr. Sax did not believe the lesions were the source of plaintiff's headaches.

**Kim Wayson, M.D. - Neurosurgeon.**

In June 2005, Nurse Wehbe referred plaintiff to neurosurgeon Kim Wayson to address her headache complaints. Plaintiff told Dr. Wayson she had progressively increasing headaches over the past 18 months, starting at the base of her neck and sitting forward behind her left eye. She has a persistent dull headache that was more intense at night. She said she had four seizures in the last two years, the last one being two months earlier. She has not had a seizure since she started taking Dilantin.

Dr. Wayson review the MRI and MRA results, and opined the two lesions were not related to the headaches. The lesions might need to be surgically removed if there was any growth.

**Providence Medical Center.**

Plaintiff was hospitalized for two weeks in March 2006, for mild diverticulitis.

An October 21, 2006, MRI of the brain revealed there was no change in either of plaintiff's two brain lesions.

4.  **Relevant Record - Non-Treatment Providers.**

**Richard Alley, M.D. - Family Practice.**

11- OPINION AND ORDER

**Mary Ann Westfall, M.D.**

Dr. Alley reviewed plaintiff's medical records and concluded she can frequently lift 25 lbs and occasionally lift 50 lbs, stand, walk, and sit for six hours in an eight-hour day, and has no pushing and pulling limitations. She has no postural, manipulative, or visual limitations.

Dr. Westfall noted plaintiff's history of alcoholism and the stroke in 2000, and concluded Plaintiff's subjective complaints were inconsistent with essentially unremarkable objective medical findings.

**Paul Rethinger, Ph.D - Psychologist.**
**Robert Henry, Ph.D. - Psychologist.**

Both these psychologists concluded plaintiff's depression does not amount to a severe mental impairment.

## DISCUSSION

1. **Rejection of Plaintiff's Testimony**.

The ALJ based his nondisability determination in part on his finding that plaintiff's testimony regarding the extent of her limitations was "not totally credible." Plaintiff contends the ALJ's stated reasons for doubting plaintiff's credibility were insufficient.

**Standards.**

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an

12- OPINION AND ORDER

underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" (the Cotton test). Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986). A claimant need not produce objective medical evidence of the symptoms or their severity. Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If a claimant produces objective evidence that underlying impairments could cause the pain she complains of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283. To determine whether plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

13 - OPINION AND ORDER

**Analysis**.

There has not been a specific diagnosis by any treating or examining physician that plaintiff is a malingerer. In addition, there is objective medical evidence to support the existence, if not the severity, of the residual effects of plaintiff's stroke in 2000, including occasional seizures and more frequent headaches. Indeed, the ALJ found these impairments were severe. Nevertheless, the ALJ found the plaintiff's credibility regarding her subjective complaints was lacking because:

> there are discrepancies between the claimant's assertions and the degree of medical treatment (including medications) sought and obtained, the diagnostic tests and findings made on examination, the reports of the treating and examining physicians, the level of restrictions on the claimant in the physician opinions of record, the level of follow-up treatment, including diagnostic testing, and the claimant's admitted daily activities.
>
> Subjective complaints are considered credible only to the extent that they are supported by the evidence of record. However, the allegations of the claimant as to the intensity, persistence, and limiting effects of her symptoms are not well supported by probative evidence and are not wholly credible.

AR at 18.

The Commissioner contends the ALJ laid out clearly and convincingly those reasons that establish plaintiff's subjective complaints are not credible. I disagree. The ALJ's reasons amount to little more than generalizations, with no specific

14- OPINION AND ORDER

examples of physical complaints that are inconsistent with specific medical evidence. For instance, the ALJ mentions plaintiff's "daily activities" but fails to explain or identify which of them is inconsistent with the medical evidence. *See* Robbins v. Social Security Admin.:

> [E]ven if the ALJ had given facially legitimate reasons for his partial adverse credibility finding, the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy. While an ALJ may certainly find testimony not credible and disregard it as an unsupported, self-serving statement, we cannot affirm such a determination unless it is supported by specific findings and reasoning.

446 F.3d 880, 885 (9th Cir. 2006). For instance, the objective evidence supports plaintiff's claim that she suffered a stroke in 2000 and now has a seizure disorder that, in fact, may have caused her to suffer seizures.

Nevertheless, the court also notes that there is no specific opinion from a treating physician as to any physical restrictions or limitations resulting from plaintiff's seizures and headaches that would preclude her from engaging in some form of substantial gainful activity. Even if plaintiff's subjective complaints are deemed to be true, the record is at best unclear as to whether plaintiff is disabled.

**2.   Rejection of Lay Witness Evidence.**

Plaintiff's son submitted written evidence of the impact of plaintiff's headaches and seizure disorder on her daily

15 - OPINION AND ORDER

activities. The ALJ summed up the son's evidence as follows:

> The undersigned has reviewed and given full consideration to [the son's report]. However, the lay opinions therein do not amount to evidence that would change the determinations made in this decision according to SSA Regulations.

AR 18. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). Here again, the ALJ failed to provide "germane reasons" for disregarding the evidence offered by plaintiff's son, or to explain why consideration of the evidence would not change her mind.

    Even if the ALJ erred in her credibility finding as to plaintiff and/or her consideration of the lay witness evidence, the issue remains as to whether the error was harmless. In Stout v. Commissioner, the Ninth Circuit "clarified" that the court has "only found harmless error when it was clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination." 454 F.3d 1050, 1055-56 (9th Cir. 2006).

    On the record before me, I must credit as true plaintiff's improperly rejected testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996). Nevertheless, based on this record, it is not clear that the ALJ would have found the plaintiff disabled had her testimony and her son's evidence been accepted as true.

See <u>Smolen</u>, 80 F.3d at 1292.

Under these circumstances, I conclude the appropriate remedy is to remand this matter for further proceedings, whereby the testimony presented by plaintiff regarding her seizures and headaches is credited as true, as is the evidence offered by her son.  The ALJ may also take into account any other appropriate factors that are already matters of record in making her disability determination.

## **CONCLUSION**

For these reasons, the Commissioner's final decision denying benefits to plaintiff is **REVERSED** and this matter is **REMANDED** for further proceedings.

Section 406(b) of the Social Security Act "controls fees for representation [of Social Security claimants] in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002)(citing 20 C.F.R. § 404.1728(a)).  Under 42 U.S.C. § 406(b), "a court may allow 'a reasonable [attorneys'] fee . . . not in excess of 25 percent of the . . . past-due benefits' awarded to the claimant." *Id*. at 795 (quoting 42 U.S.C. § 406(b)(1)(A)).  Because § 406(b) does not provide a time limit for filing applications for attorneys' fees and Federal Rule 54(d)(2)(B) is not practical in the context of Social Security sentence-four remands, Federal Rule of Civil Procedure 60(b)(6) governs.  *Massett v. Astrue*, 04-CV-1006 (Brown, J.)(issued June 30, 2008).  *See also McGraw v. Barnhart*,

17- OPINION AND ORDER

450 F.3d 493, 505 (10th Cir. 2006). To ensure that any future application for attorneys' fees under § 406(b) is filed "within a reasonable time" as required under Rule 60(b)(6), the Court orders as follows:  If the Commissioner finds Plaintiff is disabled on remand and awards Plaintiff past-due benefits and if, as a result, Plaintiff intends to submit such application for attorneys' fees under § 406(b), Plaintiff shall submit any such application within 60 days from the issuance of the Notice of Award by the Commissioner.

    IT IS SO ORDERED.

    DATED this 16 day of July, 2008.

                                      /s  Malcolm F. Marsh
                                      MALCOLM F. MARSH
                                      United States District Judge